# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT LAWWILL, | ) | CASE NO:    1:08-cv-02840 |
| | ) | |
| Plaintiff, | ) | JUDGE NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| FRANCISCO PINEDA, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  Petitioner, Robert Lawwill, ("Lawwill"), challenges the constitutionality of his conviction in the case of *State v. Lawwill*, Case No. CR 474218 (Cuyahoga County 2009).  Lawwill filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 3, 2008 in the United States District Court for the Northern District of Ohio.  (Doc. 1.)  For the reasons set forth below, that portion of Lawwill's first ground for relief alleging a due process violation because he was not provided adequate notice of the charges against him and because his trial did not protect him from his right to be free from double jeopardy should be GRANTED.  To cure these constitutional violations,

either the state must strike all but one of counts of which Lawwill was convicted or Lawwill's petition for a writ of habeas corpus should be granted and he should be recharged and retried.  Lawwill's second ground for relief, alleging that the trial court violated his right to due process by retaining juror Martinez, should be DENIED.  Finally, Lawwill's third ground for relief, alleging that his re-sentencing violated his Sixth Amendment right to trial by jury should be GRANTED.   To cure this constitutional violation,   Lawwill should be re-sentenced.  In re-sentencing Lawwill, the state court should be limited to sentencing him to no more than two years' imprisonment on any remaining count of the indictment.

I

The state appellate court hearing Lawwill's direct appeal found the follow facts to be relevant to his case:

{¶ 2} The State of Ohio indicted Lawwill on eight counts of gross sexual imposition in violation of R.C. 2907.05 and eight counts of kidnapping in violation of R.C. 2905.01.  The case proceeded to jury trial, during which the trial court granted Lawwill's Crim.R. 29 motion for acquittal as to eight counts of kidnapping and denied the same as to the eight counts of gross sexual imposition.  The jury returned a guilty verdict on all eight counts of gross sexual imposition and included a finding that the victim was under age thirteen for each count.  The trial court sentenced Lawwill to a total of nine years in prison: three years on each count, with counts one, two and three to be served consecutive to each other and the remaining counts to be served concurrent to counts one, two and three.

{¶ 3} The events giving rise to the case at bar occurred sometime between December 28, 1992 and December 27, 1999, when the child victim ("J.D.") was between the ages of five and twelve years old.  During those years, J.D., Lawwill's niece, [sic] spent almost every weekend at Lawwill's home.  J.D. testified to the following:  Her first sexual contact with Lawwill occurred when she was five years old, while watching television in Lawwill's bedroom; Lawwill placed his fingers on her vagina and touched her leg. Tr. 257-263. J.D. concluded that the same or similar abuse continued through seventh grade.  Tr. 264-266.

*State v. Lawwill*, 2007 WL 1559563, at *1 (Ohio App. May 31, 2007).

-2-

Lawwill filed a timely notice of appeal to the state appellate court.  Lawwill

asserted ten assignments of error in his brief in support of his appeal:

> 1. The defendant-appellant was denied due process of law under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, section 10 of the Ohio Constitution and the right to be protected from double jeopardy when the trial court failed to dismiss the duplicitous [sic] indictment and failed to issue a findings of fact and conclusions of law.

> 2. The trial court denied the defendant-appellant due process of law under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, section 10 of the Ohio Constitution when it overruled the motion for judgment of acquittal at the end of the state's case.

> 3. The defendant-appellant was denied due process of law under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution and Article I, section 10 of the Ohio Constitution by being convicted against the manifest weight of the evidence.

> 4. The defendant-appellant was denied due process of law when the trial court overruled the motion for mistrial after a juror deliberately concealed the fact that she was familiar with the investigating detective in the case because her daughter was a sexual abuse victim, even though she specifically denied being familiar with the detective during voir dire.

> 5. The defendant–appellant was denied due process of law and his right to a fair trial when the trial court specifically instructed the jury regarding the fact that the defendant testified on his own behalf.

> 6. The trial court prejudicially erred in sentencing the defendant-appellant to more then the minimum and consecutive terms of imprisonment and applied an *ex post facto* sentencing law to his sentence.

> 7. The defendant-appellant was denied due process of law when the trial court sentenced him using post-S.B.2 sentencing laws for pre-S.B.2 acts.

> 8. The defendant-appellant was denied his right to due process and a fair trial when the trial court instructed the jury that if convicted he could receive probation.

> 9. The defendant-appellant was denied due process of law and his right to a fair trial when he was not present in open court during the jury questioning regarding Ms. Martinez's familiarity with the investigating detective in this case.

-3-

10. The defendant-appellant was denied due process of law through the cumulative errors that occurred in his case.

On July 2, 2007, the state appellate court affirmed Lawwill's conviction but remanded the case for re-sentencing.  According to the appellate court, the Ohio legislature enacted S.B. 2 on July 1, 1996.  This altered sentences for felonies of the third degree from a minimum of 1 year's imprisonment and a maximum of two years' imprisonment prior to July 1, 1996 to a minimum of 1 year's imprisonment and a maximum of five years' imprisonment after July 1, 1996.  The state appellate court remanded the case for the trial court to determine which crimes Lawwill committed prior to July 1, 1996, and then to sentence him in accordance with the law in effect at those times.

Lawwill timely filed a notice of appeal in the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Lawwill asserted three propositions of law:

1. A defendant is denied due process of law under the Fifth, Sxth and Fourteenth Amendments of the United States Constitution and Article I, section 10 of the Ohio Constitution when he is not provided with sufficient notice of the charges against which he is to defend himself and the right to be protected from double jeopardy when the trial court fails to dismiss duplicative Indictment that result in convictions for identical charges.

2. A defendant is denied due process of law when a trial court overrules a motion for mistrial after a juror deliberately conceals in voir dire the fact that she is familiar with the investigating detective in the case because her daughter was a sexual abuse victim.

3. A trial court may not make a factual determination as to which acts in the indictment occurred prior to july 1, 1996 and which acts in the indictment occurred after july 1, 1996.

On December 12, 2007, the Ohio Supreme Court issued denied Lawwill leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

On January 23, 2008, the trial court re-sentenced Lawwill to an aggregate term of

-4-

nine years incarceration.  In sentencing Lawwill, the court determined that counts one,

two, and three were based on conduct occurring on or after July 1, 1996.  The court

sentenced Lawwill to three consecutive three-year terms of imprisonment on those

counts.  The court also determined that the remaining counts occurred prior to July 1,

1996.  The court sentenced Lawwill to one and a half years' imprisonment on each of

these counts, the sentences to be served concurrently with each other and concurrently

with the sentences for counts one through three.  The court also classified Lawwill a

Tier II Offender.

Lawwill filed a timely notice of appeal to the state appellate court.  Lawwill

asserted three assignments of error on appeal:

> 1. Lawwill was denied his right to due process under sections 5 and 10, Article I
> of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United
> States Constitution when he was convicted of multiplicitous counts in his
> indictment.

> 2. Lawwill was denied his right to a jury trial under sections 5 and 10, Article I of
> the Ohio Constitution and the Sixth and Fourteenth Amendments of the United
> States Constitution when the trial court, and not the jury, made factual findings
> relative to his guilt or innocence.

> 3. Lawwill was denied his right to due process under sections 5 and 10, Article I
> of the Ohio Constitution and the Sixth and Fourteenth Amendments of the United
> States Constitution when he was convicted based upon a structurally defective
> indictment in the above case.

On February 17, 2009, the state appellate court found that Lawwill's first and third

assignments of error were barred by *res judicata* and found that the second assignment

of error lacked merit.  The appellate court, therefore, affirmed the judgment of the trial

court.

Lawwill filed a timely notice of appeal in the Ohio Supreme Court.  In his

memorandum in support of jurisdiction, Lawwill asserted one proposition of law:

> 1. In a jury trial, the Due Process and Jury Trial Clauses of the Ohio and United States Constitutions require juries to find any fact that increases the maximum penalty.  The offense date is a factual finding that increases the maximum penalty if the indictment period covers multiple versions of the statute, which, in turn, apply differing periods of incarceration.  In such cases, the offense date must be found by the jury to avoid constitutional violations.

On July 1, 2009, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question.

Lawwill filed a petition for a federal writ of habeas corpus while his appeal was pending in the Ohio Supreme Court.  This court stayed Lawwill's petition until the Ohio Supreme Court journalized its opinion disposing of his appeal.  Lawwill now asserts three grounds for relief in support of his petition:

> Ground one:  A defendant is denied due process of law under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, section 10 of the Ohio Constitution when he is not provided with sufficient notice of the charges against which he is to defend himself and the right to be protected from double jeopardy when the trial court fails to dismiss duplicative indictments that result in convictions for identical charges.

> Supporting facts:  Eight identical counts in the indictment all stated the following: Lawwill was convicted on eight identical counts of Gross Sexual Imposition (all third degree felonies) (R.C. §2907.05) alleging that the acts occurred between December 28, 1992 to December 27, 1999.  This timeframe covered Pre- and Post-S.B. 2 statutes. The Pre-S.B. 2 sentencing statute provided for a penalty of one (1), one and one-half (1 ½) or two (2) years imprisonment.  See, R.C. §2929.14.  The Post-S.B. 2 sentencing statute provided for 1-5 years imprisonment. See, R.C. §2929.14 (Law effective after July 1, 1996).  Lawwill was sentenced to three years on each of the eight counts with Counts 1, 2, and 3 to run consecutive to each other for a total term of imprisonment of (9) nine years.

> Ground two:  A defendant is denied due process of law when a trial court overrules a motion for mistrial after a juror deliberately conceals in *voir dire* the fact that she is familiar with the investigating detective in the case because her daughter was a sexual abuse victim.

-6-

Supporting facts:  Juror in *voir dire* denied knowing any participants in the trial including the lead detective in the case.  During deliberations, however, the juror revealed that she was familiar with the lead detective in the case because he had investigated a sexual abuse claim brought by her daughter.

Ground three:  A trial court may not make a factual determination as to which acts in the indictment occurred prior to July 1, 1996 and which acts in the indictment occurred after July 1, 1996.

Supporting facts:  During the time frame presented in the indictment in this case, the criminal sentencing law in the State of Ohio changed.  After July 1, 1996, the penalties for third degree felonies became more severe.  The Court of Appeals on direct appeal, remanded the case for re-sentencing directing the trial court to make factual determinations as to when the crimes in the indictment took place.  No jury determination was made as to when the alleged crimes and the charges in the indictment took place.

Respondent filed an Answer/Return of Writ on November 17, 2009.  Doc. No. 18.

Lawwill filed a Traverse on February 1, 2010.  Doc. No. 21.  Thus, the petition is ready

for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Lawwill.

Lawwill filed his writ of habeas corpus in the Northern District of Ohio and raises claims

regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Cuyahoga County is within this court's geographic

jurisdiction.  This court has jurisdiction over Lawwill's petition.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Lawwill's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Lawwill has no state remedies available for his claims.  Because no state remedies remain available to him, Lawwill has exhausted state remedies.

D.    *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v.*

-9-

*Harless*, 459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue.  *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

Respondent does not argue that Lawwill has defaulted any of his claims.

### III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S.      , 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in

state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Lawwill's three grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.      *Ground one:  Whether the trial court denied Lawwill due process because he was not provided with adequate notice and was not protected from double jeopardy when the court failed to dismiss a duplicative indictment*

Lawwill contends in his first ground for relief that the trial court erred by refusing to dismiss a duplicative indictment.  According to Lawwill, this violated his due process rights of adequate notification of the charges against him and protection against double jeopardy.  Respondent denies that the indictment violated Lawwill's due process rights.

The Fourteenth Amendment did not incorporate the Fifth Amendment right to a grand jury indictment against the states.  *Apprendi v. New Jersey*, 530 U.S. 466, 477

-11-

n.3 (2000).  Nevertheless, "basic principles of fundamental fairness" and the Notice Clause of the Sixth Amendment demand that a defendant be adequately notified of the precise nature of the charges against him, whether by indictment or by some other means.  *Russell v. United States*, 369 U.S. 749, 765 (1962).  Moreover, due process requires that the charges against a defendant be sufficiently described to protect the defendant from double jeopardy.  *Valentine v. Konteh*, 395 F.3d 626, 634 (6th Cir. 2005).

Lawwill's indictment gave the dates of all his offenses as December 28, 1992 to December 27, 1999.  The indictment consisted of eight counts of Gross Sexual Imposition and eight counts of Kidnapping.  Each of the eight counts of Gross Sexual Imposition, with some variation in the first count, read as follows:  "The Grand Jurors, on their oaths . . . find that the Defendant(s) unlawfully had sexual contact with Jane Doe, DOB:  December 28, 1987, not his spouse, whose age at the time of the said sexual contact was under 13 years of age, to-wit:  DOB December 28, 1987."  Each count of Kidnapping, with some variation in the first count, read as follows:

> The Grand Jurors, on their oaths . . . find that the Defendant(s) unlawfully and by force, threat or deception removed Jane Doe, DOB:  December 28, 1987, from the place where she was found or restrained her of her liberty for the purpose of engaging in sexual activity, as defined in Section 2907.01 of the Revised Code, with Jane Doe, DOB:  December 28, 1987 against her will.

No dates or other information distinguished the counts of each offense from one another.

Lawwill cites *Valentine* in support of his argument, as he did in the state appellate court on direct appeal.  A close look at *Valentine* is necessary to understand Lawwill's argument and the response of the state appellate court.

-12-

*1.  Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005)

Michael Valentine ("Valentine") was convicted of 20 counts of child rape and 20 counts of felonious sexual penetration of a minor for sexually abusing his stepdaughter. The indictment described 40 offenses as occurring between March 1, 1995 and January 16, 1996.  Each count of rape alleged that Valentine "unlawfully engaged in sexual conduct with [the stepdaughter] not his spouse by purposely compelling her to submit by the use of force or threat of force, [the stepdaughter] being under the age of 13 years, to-wit: d.o.b. 11-18-87."  *Valentine*, 395 F.3d at 629 (quoting the indictment).  The indictment did not include any information to distinguish one count of rape from another. Similarly, each count of felonious sexual penetration alleged that Valentine "unlawfully without privilege to do so inserted a part of the body, an instrument, apparatus or other object to-wit: finger, into the vaginal or anal cavity of another, to-wit: [the stepdaughter] not the spouse of the offender and who was under the age of 13 years, to-wit: d.o.b. 11-18-87, by purposely compelling her to submit by force or threat of force."  *Id.*  There was no additional detail.  The bill of particulars simply restated the allegations, adding only the family home as the place at which all 40 offenses occurred.

At trial, the only witness to testify to the number and nature fo the assaults was the alleged victim:

> She testified that Valentine forced her to perform fellatio in the family living room on "about twenty" occasions and that Valentine digitally penetrated her vagina in the family living room on "about fifteen" occasions.  The child went on to testify generally as to further similar incidents occurring in her bedroom, in her siblings' bedroom, and in her mother and Valentine's bedroom.  She additionally testified that Valentine achieved anal penetration with his penis on "about ten" occasions. As the Petitioner points out, the victim altered her numbers somewhat during cross-examination.

-13-

*Id.*  When a jury returned a verdict of guilty as to all counts, the court sentenced Valentine to 40 consecutive life terms.  The state appellate court affirmed all 20 counts of rape and affirmed 15 of the 20 counts of felonious sexual penetration, finding no evidence to support the other five counts of felonious sexual penetration.  When the Ohio Supreme Court denied leave to appeal, Valentine unsuccessfully sought state post-conviction remedies.

Valentine filed a petition for a federal writ of habeas corpus in the Northern District of Ohio.  The district court granted the writ upon one of Valentine's four grounds for relief, that his conviction violated his right to due process because his indictment did not specify the dates of his alleged offenses or specify which conduct occurred on which date.  The district court found that the identical counts in the indictment violated Valentine's due process rights to be notified of the crimes of which he was charged and to protection from double jeopardy.

The state appealed the district court's decision to the Sixth Circuit.  The Sixth Circuit court found that the state appellate court had correctly identified the federal constitutional  issue at stake in Valentine's case as whether the lack of specificity as to dates and conduct in his indictment denied Valentine due process of law.  Consequently, the Sixth Circuit found that the issue on appeal was whether Ohio courts unreasonably applied Supreme Court precedent in finding that Valentine's indictment did not violate due process.

In examining the arguments of the parties, the Sixth Circuit relied primarily upon *Russell v. United States,* 369 U.S. 749 (1962), for criteria for determining whether an indictment is sufficient:

-14-

> These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'"

*Valentine*, 395 F.3d at 631 (quoting *Russell*, 369 U.S. at 763-64).  Following *Russell*, *Hamling v. United States,* 418 U.S. 87 (1974), and *United States v. Cruikshank,* 92 U.S. 542 (1875), the Sixth Circuit held, "[A]n indictment is only sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy.  *Valentine*, 395 F.3d at 631 (footnote omitted).  The court's conclusion after applying these criteria to Valentine's case was the following:

> While the indictment in this case did comply with the first prong of *Russell* by adequately setting out the elements of the charged offense, the multiple, undifferentiated charges in the indictment violated Valentine's rights to notice and his right to be protected from double jeopardy.  The failure of the Ohio Court of Appeals to rectify these violations constitutes an unreasonable application of well-established constitutional law as announced by the Supreme Court.

*Id.*

The Sixth Circuit's reasoning in *Valentine* is directly applicable to Lawwill's circumstances and arguments:

> This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements.  Certainly, prosecutors should be as specific as possible in delineating the dates and times of abuse offenses, but we must acknowledge the reality of situations where young child victims are involved.  The Ohio Court of Appeals found that there was no evidence the state had more specific information regarding the time period of the abuse.  Valentine's claims regarding the lack of time- and date-specific counts therefore fail.

> The problem in this case is not the fact that the prosecution did not provide the defendant with exact times and places.  If there had been singular counts of each offense, the lack of particularity would not have presented the same problem.

-15-

Instead, the problem is that within each set of 20 counts, there are absolutely no distinctions made.  Valentine was prosecuted for two criminal acts that occurred twenty times each, rather than for forty separate criminal acts.  In its charges and in its evidence before the jury, the prosecution did not attempt to lay out the factual bases of forty separate incidents that took place.  Instead, the 8-year-old victim described "typical" abusive behavior by Valentine and then testified that the "typical" abuse occurred twenty or fifteen times.  Outside of the victim's estimate, no evidence as to the number of incidents was presented.

Given the way Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own.  The jury could not have found Valentine guilty of Counts 1-5, but not Counts 6-20.  Nor could the jury have found him guilty of Counts 1, 3, 5 and 7, but not the rest.  Such a result would be unintelligible, because the criminal counts were not connected to distinguishable incidents.  The jury could have found him "not guilty" of some of the counts only if they reached the conclusion that the child victim had overestimated the number of abusive acts.  Just as courts should not permit abuse prosecutions to be defeated due to the limited ability of child victims to remember precise temporal details, they should for similar reasons not permit multiple convictions to stand based solely on a child's numerical estimate.

As the forty criminal counts were not anchored to forty distinguishable criminal offenses, Valentine had little ability to defend himself.

*     *     *     *

The indictment, the bill of particulars, and even the evidence at trial failed to apprise the defendant of what occurrences formed the bases of the criminal charges he faced.  Valentine was prosecuted and convicted for a generic pattern of abuse rather than for forty separate abusive incidents.  States have the authority to enact criminal statutes regarding a "pattern" or a "continuing course" of abuse.  They do not have the power to prosecute one for a pattern of abuse through simply charging a defendant with the same basic offense many times over.

*     *     *     *

Requiring some minimal differentiation between criminal counts is quite different from requiring "exact time and place specifications."  Certainly, this opinion does not require that indictments allege the date, hour, and precise location of crimes.  Instead, the defendant, the judge, and the jury must be able to tell one count from another.

To be sure, differentiation will often require reference to date ranges or time ranges or certain locations or certain actions.  But, differentiation does not

-16-

require overly-burdensome precision.

*Valentine*, 395 F.3d at 632-37 (footnotes and citations omitted).  The Sixth Circuit concluded that the indictment and bill of particulars permitted a conviction and sentence for one count each of rape and felonious sexual penetration.  Any additional convictions, it held, would violate due process by providing Valentine with inadequate notice to defend himself and providing inadequate protection against double jeopardy.  The court vacated, therefore, all other counts of which Valentine had been convicted.

The three-judge panel's opinion in *Valentine* was accompanied by a dissent by Judge Ronald Lee Gilman.  Judge Gilman pointed out that although other courts have found that the use of multiple identical counts in instances of child abuse fails to sufficiently apprise a defendant of the charges he faces, the Supreme Court has never so held.  For purposes of awarding habeas relief, Judge Gilman continued, whether the Sixth Circuit or other, inferior courts believe undifferentiated multiple identical courts of child abuse to be unconstitutional is beside the point:  Habeas relief may only be awarded for applications of law that are contrary to United States law *as found in the holdings of the Supreme Court*.  He continued:

> [T]he majority does not articulate why, in its opinion, the decision of the Ohio Court of Appeals was contrary to, or involved an unreasonable application of, clearly established federal law.  In its discussion, the state appellate court applied existing Ohio law on the subject of child victims, much of which weighed the policy considerations involved in a *Russell* analysis.  The Ohio Court of Appeals, for example, observed that "[i]t is well-established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses cannot be determined with specificity," citing *State v. Daniel,* 97 Ohio App.3d 548, 647 N.E.2d 174, 180 (1994).  It also noted that, in the present case, the victim "is an eight-year old child who may not be able to remember exact dates and times, considering that the same conduct occurred during a ten-month period of time and continued until she reported it to her teacher."  Ultimately, the court's decision turned on the fact that the victim was a

-17-

young child.  Because *Russell* dealt with individuals convicted of refusing to answer questions posed by a congressional subcommittee, not with the special public policy concerns involved where a young child is both the victim and the sole witness, I see nothing in the state-court opinion that is an unreasonable application of the *Russell* standard.

*Valentine*, 395 F.3d at 641-42.

2.  *Lawwill's Direct Appeal in the State Appellate Court*

On direct appeal to the state appellate court, Lawwill argued, as he does here,

that the trial court erred by denying his motion for a more detailed bill of particulars, in

violation of his due process rights to notice of the charges against him and to be free

from double jeopardy.  The state appellate court addressed these claims in its decision:

Here, Lawwill's indictment indicates the dates of the offenses as occurring between December 28, 1992 and December 27, 1999.  Lawwill invokes *Hemphill,* supra, and *Valentine,* supra, to support his contention that his due process rights were violated when presented with a duplicitous indictment alleging the same acts during the same time frame.  However, the circumstances of the instant case are distinguishable from those in *Hemphill* and *Valentine.*

"Where such crimes constitute sexual offenses against children, indictments need not state with specificity the dates of the alleged abuse, so long as the prosecution establishes that the offense was committed within the time frame alleged.  This is partly due to the fact that the specific date and time of the offenses are not elements of the crimes charged.  Moreover, many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time.  The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse."  (Internal citations omitted.)  *State v. Yaacov,* Cuyahoga App. No. 86674, 2006-Ohio-5321.

{¶ 9} The *Yaacov* court made two distinctions from *Valentine* and *Hemphill:*  First, the child victim in the *Yaacov* case testified with great specificity; second, *Yaacov* did not require specific dates for his defense because his defense constituted an outright denial of the offenses charged.

{¶ 10} With regard to specificity, the child victim in *Yaacov* testified as to how, when, and where the abuse occurred, and would have been able to testify with even more specificity had her diary not been missing.  Similarly, the prosecution

-18-

in *State v. McGill* (2000), Greene App. No. 99 CA 25, 2000 Ohio App. LEXIS 5768, 2000 WL 1803650 introduced the child victim's report cards into evidence at defendant's first trial in order to demonstrate what years corresponded with each of the victim's years in grade school.  As such the child victim in *McGill* was able to testify as to what abuse occurred in each year in grade school, thus corresponding to the years alleged in the indictment.  Notably, the child victim in *McGill* did not testify as to specific dates in time when the abuse occurred, and the second district found sufficient evidence to affirm the conviction.

{¶ 11} In the instant case, prosecution similarly introduced photographs of J.D. that corresponded to each year in grade school.  As such, J.D. was able to testify as to what abuse occurred in each grade school year, thus corresponding to the years alleged in the indictment.  Specifically, J.D. testified as to sexual contact that occurred at age five, while watching television in Lawwill's bedroom.  Tr. 260. At that point, Lawwill put his hands down J.D.'s pants, inside of her underwear, and came into contact with her vagina.  Tr. 261.  Prosecution thereafter held up a photograph that corresponded to first, second, third, fourth, fifth, sixth and seventh grade and asked J.D. if sexual abuse occurred during those years in grade school.  Tr. 264-66.  J.D. answered affirmatively.  Tr. 264-66. For example:

"Q. Second grade. Do you recall whether or not he touched you in the second grade?

Yes, he did.

Where did he touch you and how did he touch you? He touched my vagina and he would rub it.

He did that to you while you were in the second grade?

Yes.

Now, would the same be true for the third, fourth, fifth, sixth and seventh grade?

Yes.

All right. So it was ongoing?

Yes.

Now, was there ever a time that he did anything different other than stick his hands down your pants and rub your vagina?

No."  Tr. 265-266.

-19-

{¶ 12} Although J.D. did not specify exact dates upon which the abuse occurred, the prosecution, through use of photographs, was able to establish that the offenses were committed within the time frame alleged.  Specifically, Lawwill put his hands down J.D.'s pants and rubbed her vagina at least once a year in the first, second, third, fourth, fifth, sixth and seventh grades.  We also find J.D.'s testimony sufficient because specific dates are not an element of the charged offense.  See R.C. 2907.05.  In addition, J.D, as a child victim, was unable to remember exact dates and times because the crimes in the instant case involved a repeated course of conduct over an extended period of time, namely seven years.  Further, the problem here is compounded because Lawwill and J.D. are related as uncle and niece, which facilitated an extended period of abuse.  See *Yaacov,* supra.

{¶ 13} The second distinction set forth in *Yaacov* relates to an accused's defense.

{¶ 14} Courts have found that an accused is entitled to specific dates where required to present his or her defense, for example, where the accused has an alibi.  See *Yaacov,* supra, citing *State v. Morgan* (C.A.6, 2001), Lucas App. No. L-00-1114.  The *Yaacov* court found that a general denial of all counts in the indictment negates the need for specific dates.  Here Lawwill's sole defense is an outright denial of any sexual contact with J.D.  Thus, Lawwill did not require specific dates in order to present his defense.

*Lawwill*, 2007 WL 1559563 at *2-*3.  The state appellate court distinguished *Valentine* on the basis that J.D. gave testimony that Lawwill touched her sexually at least once in each of eight years and because Lawwill's defense was a complete denial of all charges.

3.  *Whether Lawwill was denied adequate notice in light of Valentine*

Lawwill contends that the indictment denied him due process because, as was the case in *Valentine*, the indictment consisted of a series of identical counts of his offense, without distinguishing detail of any kind.  Consequently, Lawwill contends, he was prosecuted for a "course of conduct" rather than for eight separate instances of prohibited behavior.  In support of this contention, he notes that the state elicited testimony that prohibited sexual conduct took place in three locations and in each of

-20-

eight years between kindergarten and seventh grade.  Lawwill also notes that no

testimony connected particular locations or years with particular counts of the

indictment.  Lawwill supports his contention that the jury found him guilty of a "course of

conduct" rather than eight separate instances of prohibited behavior by citing the

question that the jury sent to the court:

> Dear judge, in regard to the eight counts, can you please provide further clarification on how the eight counts were determined.  We are unsure whether each count represents a calendar year where an instance of sexual contact occurred or whether each count represents an instance that occurred at any point during the period of December 27, 1992, through December 27, 1999.  Thank you, Jonathan Becker.

Transcript of Proceedings ("Tr."), Doc. No. 23, v. III, p. 572.

> In response to this question, the court instructed the jury as follows:

> Ladies and gentlemen, the indictments on all eight counts are identical.  It reads that the grand jurors do find and present that the above named Robert Lawwill on or about the December 28, 1992 [sic] to December 27, 1999, did unlawfully have sexual contact with the victim, et cetera.
> You must rely on your individual and collective memories of what the evidence was and make your findings accordingly.
> Remember that the charges set forth in the indictment constitute separate and distinct matters in each count.  You must consider each count and the evidence applicable to each count separately, and you must state your findings as to the other counts.
> The defendant may be found guilty or not guilty of any or all of the offenses charged.  It's up to you to decide those factual questions.  Please discuss the response in the privacy of your jury room.

Tr. at 572-73.

> In *Valentine*, all but one of the convictions for each offense were overturned

because "[i]n its charges and in its evidence before the jury, the prosecution did not

attempt to lay out the factual bases of forty separate incidents that took place."

*Valentine*, 395 F.3d at 632.  Rather, "the 8-year-old victim described 'typical' abusive

behavior by Valentine and then testified that the 'typical' abuse occurred twenty or fifteen times.  Outside of the victim's estimate, no evidence as to the number of incidents was presented."  *Id.*  at 633.  Consequently, individual instances of each count, for all practical purposes, became a single course of conduct during the named period.

The instant case differs from *Valentine* in some respects  At Lawwill's trial, the prosecutor asked the victim whether Lawwill molested her in each of eight years, using a picture of the victim taken in each year to remind her of the events of that year.  In addition, the prosecutor stated in her closing arguments, "[T]here are eight counts of gross sexual imposition, meaning that between [sic] this eight year period five, six, seven, eight, nine, ten, 11, 12 -- it represents at least one time during that year that he touched her . . . ."  Tr., v. III at 501.  It would seem, therefore, that Lawwill had notice that he was accused of eight separate incidents of Gross Sexual Imposition, distinguishable by the time period during which each occurred.

Nevertheless, the course of Lawwill's trial and his conviction are problematic, for a variety of reasons.  First, the prosecution did not restrict its case to a single count of gross sexual imposition per year against Lawwill.  The indictments for gross sexual imposition were worded identically in relevant part, and none gave a date or even a range of time within which the sexual contact occurred.  In addition, the prosecution's opening statement argued that Lawwill had engaged in sexual conduct with the victim "far exceeding eight times."  Tr., v. I at 189.  Furthermore, when the jury sent the question to the court and the court asked the prosecution about a response, the prosecutor answered, "I know I mentioned during opening and close that [the period of

time between 1992 and 1999] represented one year for every year of her life, but that was just our theory," Tr., v. III at 570, and did not ask for an instruction that each count represented a different year.  Testimony from the victim estimated that Lawwill molested her more than 100 times.  Tr., v. II at 272-73.  Thus, although the prosecution indeed presented evidence that Lawwill molested the victim in each of eight years, the indictments and evidence actually supported a conclusion that Lawwill had sexual contact with the victim *at least* once a year for eight years, for more than 100 times in total.

The prosecution's failure to clearly restrict its case to a single count of gross sexual imposition per year against Lawwill was a problem because Lawwill attempted to raise a time-specific defense for part of the relevant period.  Lawwill and his two sons testified that, due to animosity between their family and the victim's, the victim did not come to his house at any time between 1992 and 1994.  Tr., v. II at 376, 417-18, 458.  No witness contradicted this testimony.  Thus, although Lawwill generally denied any sexual contact with the victim, he also asserted a time-specific defense for portions of the relevant period that might have provided a defense to two of the counts of gross sexual imposition, had each count clearly referred to conduct in a different year between 1992 and 1999.

The record clearly shows, moreover, that the jury was confused as to whether each count of gross sexual imposition referred to conduct in a different year between 1992 and 1999.  The note to the court during deliberations stated, "We are unsure whether each count represents a calendar year where an instance of sexual contact occurred or whether each count represents an instance that occurred at any point

during the period of December 27, 1992, through December 27, 1999." Tr., v. III at 572. The court's answer seemed to deny that each count was associated with a particular year: "[T]he indictments on all eight counts are identical. It reads that the grand jurors do find and present that the above named Robert Lawwill on or about the December 28, 1992 [sic] to December 27, 1999, did unlawfully have sexual contact with the victim, et cetera." Tr., v. III at 573. The only conclusion that can be drawn from this instruction was that the jury could find Lawwill guilty on all eight counts if it found that Lawwill engaged in illicit sexual activity with the victim *on any eight occasions* within the period from December 1992 through December 1999. Thus, the prosecution's possible suggestion to Lawwill that it was seeking to prove one count of gross sexual imposition in each of the eight years from 1992 through 1999 was illusory.

For these reasons, Lawwill's case is materially identical to *Valentine*: In both cases, the defendant faced an indictment that accused him of multiple, undifferentiated counts of illicit sexual conduct over an extended period of time. As the Sixth Circuit stated in *Valentine*, there were no distinctions made between each of the eight counts of gross sexual imposition. For all practical purposes, Lawwill was accused of a pattern of behavior rather than many distinguishable acts. As was true in *Valentine*, it would have been irrational, on the basis of the indictment, instructions, and evidence, to have found Lawwill guilty on some counts but not guilty on others. Consequently, "As the forty criminal counts were not anchored to forty distinguishable criminal offenses, [the defendant] had little ability to defend himself." *Valentine*, 395 F.3d at 633.[1]

---

[1] Nevertheless, *Valentine* is problematic as a ground for habeas relief. Habeas relief should only be granted when a decision is contrary to or involves an unreasonable

-24-

For these reasons, the indictment, trial, and instructions in Lawwill's case violated his due process right to adequate notice of the crimes with which he was charged. *Valentine* teaches the cure for this violation. There was no constitutional problem with finding Lawwill guilty of one count of gross sexual imposition; problems arose when he was charged with additional, undifferentiated counts of the same offense. *Valentine*, 395 F.3d at 637. Consequently, either the state must drop all but one of the counts on which Lawwill was convicted or this court must grant the writ. *Id.* at 638-39.

> *4. Whether Lawwill was denied due process because his indictment and trial did not provide protection against double jeopardy in light of Valentine*

Lawwill also contends that the indictment denied him due process because, as was the case in *Valentine*, the indictment and evidence at trial fail to protect him from double jeopardy. Respondent claims that Lawwill's conviction protects him against double jeopardy and replies that the state appellate court found that the indictment and trial did not deny Lawwill protection against double jeopardy because the state

---

application of clearly established Federal law, as determined by the Supreme Court. *Valentine* teaches that it is an interpretation of the holding in *Russell*. *Russell*, however, involved defendants whose indictments for refusal to answer questions when appearing before a congressional subcommittee were insufficient because they did not identify as a subject of inquiry the topic of the questions the defendants' refused to answer. As *Valentine* noted, however, indictments involving allegations of child molestation are given considerably more leeway than is usual in providing notice to defendants of the times during which the alleged wrongdoing occurred. *Valentine*, 395 F.3d at 637. Consequently, it is difficult to see how the state appellate court was not merely wrong but *unreasonably* wrong in light of *Russell*. It is also difficult to see how the state appellate court could have been *unreasonably* wrong in distinguishing Lawwill's case from *Valentine* when one third of the panel hearing *Valentine* disagreed with the decision in that case. Nevertheless, as the Sixth Circuit stated that it was interpreting the Supreme Court's decision in *Russell* by its holding in *Valentine*, this court is required to follow the precedent of *Valentine* in deciding the instant case.

demonstrated factually that the charges were different.  Respondent errs in claiming that Lawwill's conviction protects him against double jeopardy and errs in his description of what the state court said.

The trial court made no specific finding regarding protection against double jeopardy.  Moreover, its finding that the prosecution managed to distinguish each of the counts of the indictment from the others is insufficient to support a finding that Lawwill was protected against double jeopardy.  J.D. testified that Lawwill abused her every time she went to his house and that she went there almost every weekend.  Tr. at 262-63.  According to J.D., "It just happened all the time."  Tr. at 263.  She was unable to remember, however, details distinguishing any one incident from other incidents.  Tr. at 265.  The prosecution claimed that the abuse occurred "far exceeding eight times."  Tr. at 189.  Thus, while Lawwill was convicted of eight incidents of Gross Sexual Imposition, the evidence indicates that there may have been additional incidents in each year and that the victim is unable to provide details to distinguish one incident from another in a given year.

In *Valentine*, the Sixth Circuit reasoned as follows regarding protection against double jeopardy:

> Due process . . . requires that criminal charges provide criminal defendants with the ability to protect themselves from double jeopardy.  In the present case, the indictment presented two important double jeopardy problems.  First, there was insufficient specificity in the indictment or in the trial record to enable Valentine to plead convictions or acquittals as a bar to future prosecutions.  Second, the undifferentiated counts introduced the very real possibility that Valentine would be subject to double jeopardy in his initial trial by being punished multiple times for what may have been the same offense
>
> In *Russell* [*v. United States*, 369 U.S. 749 (1962)], the court found that indictments are only constitutionally sufficient if "the record shows with accuracy

to what extent he may plead a former acquittal or conviction" in proceedings taken against him for a similar offense. 369 U.S. at 764. The District Court held that the indictments in this case failed to comply with this mandate of *Russell*. 285 F. Supp. 2d at 1026-27. In *Russell,* a case in which the defendants were being tried for their failure to answer questions before a congressional subcommittee, the Court ruled that the charging information was specific enough to protect against double jeopardy:

> Since the indictments set out not only the times and places of the hearings at which petitioners refused to testify, but also specified the precise questions which they then and there refused to answer, it can hardly be doubted that the petitioners would be fully protected from again being put in jeopardy for the same offense, particularly when it is remembered that they could rely upon other parts of the present record in the event that future proceedings should be taken against them.

369 U.S. at 764. In this case, there was no specificity regarding the factual offenses Valentine allegedly committed. If Valentine had been acquitted of these 40 charges, it is unclear what limitations would have been imposed on his re-indictment. Would double jeopardy preclude any prosecution concerning the abuse of this child victim, the abuse of this victim during the stated time period, the abuse of this victim at their residence, the stated sexual offenses in the indictment, the offenses offered into evidence at trial, or some group of forty specific offenses? We cannot be sure what double jeopardy would prohibit because we cannot be sure what factual incidents were presented and decided by this jury. If Valentine had been found not guilty, it is not clear to what extent he could ably assert that his acquittal barred prosecution for other similar incidents.

*Valentine*, 395 F.3d at 634-35.[2]

As already described, Lawwill's indictment, trial, and jury instructions resulted in

---

[2] *Valentine* does not cite any case, including *Russell*, that would be similar to the facts of Lawwill's case. In *Russell*, the defendants were adults who had been called upon to testify before a Congressional committee and refused to answer questions. Given the leeway accorded the framing of indictments in charging defendants with child molestation, *Valentine*, 395 F. 3d at 632, the facts of *Russell* are distinguishable from the facts of the instant case. For this reason, had this court been relying solely on the holdings of the Supreme Court, it would have determined that the state appellate court's finding was a reasonable application of clearly established federal law because it was not contrary to a holding of the Supreme Court *upon facts materially indistinguishable* from the instant case. As *Valentine* has interpreted the holding of *Russell* beyond the facts of that case, however, this court is bound by Sixth Circuit precedent to do likewise.

his conviction for a pattern of behavior rather than upon eight distinguishable counts of gross sexual imposition. The victim testified that there were more than a hundred incidents of molestation between December 1992 and December 1999, and the prosecutor emphasized this point. It is impossible to tell which incidents were the basis of Lawwill's eight convictions. Should Lawwill again be indicted for gross sexual imposition of J.D. during December 1992 and December 1999, he would be unable to determine whether any of the counts on which he was convicted barred the counts of a second indictment on the ground of double jeopardy.[3]

Lawwill's indictment and trial failed to protect him against double jeopardy. Consequently, his indictment and trial were not a reasonable application of clearly established federal law, as interpreted by the Sixth Circuit in *Valentine*. This violated his right to due process.

Nor may the state cure this constitutional violation by promising not to try Lawwill again. *Valentine* found the following in rejecting a similar proffer to cure a violation of the Double Jeopardy Clause:

> The state now declares it "is willing to stipulate, Valentine cannot be indicted for either rape or felonious sexual penetration for the period set forth in the indictment." Resp.'s Br. at 11. By their argument, this stipulation would cure any double jeopardy problem. *See Fawcett v. Bablitch,* 962 F.2d 617, 619-620 (7th Cir.1992) ("The prosecutor took care of the [double jeopardy issue] by stipulating that [the defendant] would be immune from further prosecution for any sexual contact with [the victim] during the entire six-month period [of the indictment].") It appears that the present case is distinguishable as Ohio's current stipulation was made only after Valentine's trial and conviction. The state additionally contends

---

[3] Lawwill is not protected against future prosecution by a statute of limitations. In 1999, Ohio extended the limitations period for gross sexual imposition to 20 years. Lawwill will remain in jeopardy of future prosecution due to conduct that forms the basis of this case until 2019. *See State v. Simms*, 2005 WL 3536469, at *2-*4 (Ohio App. Dec. 23, 2005).

> that as a practical matter, Valentine will face no further prosecution.  They argue that since Valentine is serving 35 consecutive life sentences, any risk of double jeopardy is "purely theoretical." Resp.'s Br. at 28-29.  This argument suggests that placing a defendant at risk of double jeopardy is acceptable so long as the prosecution wins and is pleased with the verdict and sentence.  In this appeal, it is immaterial that Valentine faces no current risk of being tried a second time.  Courts in habeas proceedings must ensure prisoners were afforded proper constitutional protections during their state criminal proceedings.  As the carbon-copy counts of Valentine's indictment would have complicated any subsequent assertion of double jeopardy, we find that his due process rights were violated.

*Valentine*, 395 F.3d at 635.  The cure in this case must be the same as the cure in

*Valentine*:  Either the state must drop all but one of the counts on which Lawwill was

convicted or this court must grant the writ.

B.     *Ground two:  Whether the trial court denied Lawwill due process because it overruled Lawwill's motion for a mistrial after discovering that a jury had concealed during voir dire that she knew the investigating detective in Lawwill's case because her daughter had been a victim of sexual abuse*

Lawwill contends in his second ground for relief that the trial court erred by

overruling Lawwill's motion for a mistrial after discovering that a juror had concealed

during *voir dire* that she knew the investigating detective in Lawwill's case.  Respondent

argues that Lawwill's argument is without merit for the reasons stated by the state court

of appeals.

The Sixth Amendment guarantees persons charged with a crime "the right to a

speedy and public trial, by an impartial jury . . . ."  A defendant's due process right to an

impartial jury does not include the right to jurors who are entirely ignorant of the facts of

the case, or who have no "preconceived notion as to the [defendant's] guilt or

innocence."  *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). Rather, "[i]t is sufficient if [a] juror

can lay aside his impression or opinion and render a verdict based on the evidence

presented in court." *Id.*  In seating a jury, then, the trial court is called upon to "distinguish between mere familiarity with [the defendant] or his past and an actual predisposition against him."  *Murphy v. Florida*, 421 U.S. 794, 800 n.4 (1975).  "The relevant question is . . . whether the [prospective] jurors . . . [have] such fixed opinions that they could not judge impartially the guilt of the defendant."  *Patton v. Yount*, 467 U.S. 1025, 1035 (1984).

A finding that a venireman can serve impartially is a question of fact to be accorded a presumption of correctness by a court hearing an petition pursuant to § 2254.  *Wainwright v. Witt*, 469 U.S. 412, 428 (1985).  Indeed, a trial court's determination that a juror is able to set aside any partiality and decide a case solely on the basis of the evidence presented in court and the law should be accorded special deference by a reviewing court:

> There are good reasons to apply the statutory presumption of correctness to the trial court's resolution of these questions.  First, the determination has been made only after an often extended voir dire proceeding designed specifically to identify biased veniremen.  It is fair to assume that the method we have relied on since the beginning, *e.g., United States v. Burr*, 25 F. Cas. No. 14,692g, p. 49, 51 (No. 14,692g) (CC Va.1807) (Marshall, C.J.), usually identifies bias.  Second, the determination is essentially one of credibility, and therefore largely one of demeanor.  As we have said on numerous occasions, the trial court's resolution of such questions is entitled, even on direct appeal, to "special deference."  *E.g., Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 500, 104 S. Ct. 1949, 1959, 80 L. Ed.2d 502 (1984).  The respect paid such findings in a habeas proceeding certainly should be no less.  *See Marshall v. Lonberger*, 459 U.S. 422, 434-435, 103 S. Ct. 843, 850-851, 74 L. Ed.2d 646 (1983).

*Patton*, 467 U.S. at 1038.

In considering the claim corresponding to Lawwill's second ground for relief presented in the state appellate court, the state court made the following findings of fact and drew the following conclusions of law:

-30-

{¶ 31} During voir dire, Lawwill's attorney specifically asked if anyone was a victim of abuse, accused of abuse, or had any other information that may be relevant to the prosecution, the defense, or the court.  Tr. 88-9.  Ms. Martinez did not respond affirmatively to his question.  Tr. 88-9.  Thereafter, during deliberations, the jury foreman wrote the trial court judge a note indicating,

"It has come to the jury's attention that Juror # 7 (Ms. Mary Martinez) had previous experience with detective Arthur King. Approximately 5 years ago Det. King investigated a case where Ms. Martinez's daughter was a victim.  The case is closed and the offender was prosecuted and found guilty.  However, as this information did not become known or recorded on the record, we as a jury wanted to ensure that it does not effect this case, Jonathan Becker."

{¶ 32} Defense counsel made an oral motion for mistrial.  Thereupon, the court conducted a hearing on the record.  The court asked Ms. Martinez if anyone inquired during voir dire if she knew of anyone close to her that was a victim of a crime or if she had a daughter close to her that was a victim of a sex offense.  Tr.578.  Ms. Martinez answered in the negative.  Tr. 578.  The court determined that the attorneys did not ask those questions of Ms. Martinez during voir dire, that Ms. Martinez did not misspeak during voir dire, and that Ms. Martinez is capable of deciding the case solely on the evidence and the law in the case at bar.  Tr. 578-80.  The court then opened the line of questioning to the attorneys and both prosecution and defense declined to question Ms. Martinez. Tr. 580.  The court then instructed the jury to continue deliberating, thus overruling Lawwill's motion for mistrial.

{¶ 33} We disagree with Lawwill's contention that he was denied due process of law when Ms. Martinez, during voir dire, failed to disclose her daughter as a sex abuse victim or that she knew Detective King.

{¶ 34} "[T]he selection and qualification of jurors are largely under the control of the trial court and, unless an abuse of discretion is clearly shown with respect to rulings thereon, they will not constitute ground for reversal."  *State v. Stein,* Richland App. No. 05-CA-103, 2007-Ohio 1153, citing *State v. Trummer* (1996), 114 Ohio App.3d 456, 683 N.E.2d 392.  "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.  *Blakemore,* supra.

{¶ 35} "[U]nless a juror is challenged for cause, he or she is presumed to be impartial."  *State v. Williams* (1997), 79 Ohio St.3d 1, 679 N.E.2d 646.  Courts apply a two-tier analysis as to juror misconduct,

"First, it must be determined whether there was juror misconduct.  Second, if the juror misconduct is found, it must then be determined whether the misconduct materially affected appellant's substantial rights."  *State v. Hughes,* Mahoning

App. No. 02-CA-15, 2003-Ohio-6094.

{¶ 36} In the first tier of the analysis where, as in the case at bar, a claim of jury misconduct involves a juror's concealment of information, the defendant must demonstrate that the jury member was not impartial.  See *Hughes,* supra.  Here, Lawwill makes no demonstration of Ms. Martinez' lack of partiality.  Oppositely, the transcript reveals Ms. Martinez assured the court that she would make determinations on the evidence and the law as it relates solely to the case at bar.  Tr. 579-80.

{¶ 37} As to the second tier, "A court may infer bias if it finds deliberate concealment, however, if the concealment was unintentional, the defendant must show that the juror was actually biased."  *Hughes,* supra.  "Because the bias of a juror will rarely be admitted by the juror himself, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it, it necessarily must be inferred from the surrounding facts and circumstances."  *Stein,* supra.  The record demonstrates that neither prosecution or defense asked the jury during voir dire if they knew Detective King or if they had any family members that were victims of sexual abuse.  Upon discovery of Ms. Martinez' background during the deliberation phase, the trial court promptly questioned Ms. Martinez on the record and in the presence of both prosecution and defense counsel.  Ms. Martinez gave her assurances that she would act impartially with regard to the case at bar.  Thus, there is no evidence on the record of deliberate concealment or actual bias.

{¶ 38} As Lawwill failed to satisfy the two-tier test set forth in *Hughes,* we find that the trial court did not abuse its discretion in overruling Lawwill's motion for mistrial.  Nor were Lawwill's due process rights violated in the instant case.

*Lawwill,* 2007 WL 1559563 at *7-*8.

Lawwill argues that the state appellate court's determination that retention of Martinez on the jury did not violate his due process rights rests on mistaken facts and irrelevant law and, therefore, is not entitled to deference by this court.  Lawwill's argument is well-taken in part, but his conclusion is rejected.

Lawwill's assertion that the state appellate court's opinion misstated the facts is correct in part.  First, the court asserted in its opinion that the trial court found that Martinez did not misspeak in *voir dire*.  In fact, the trial court made no such explicit

-32-

finding.  The court implied, however, that Martinez did not misspeak by failing to declare that a family member had been the victim of a sex crime because she was never asked about that.  The trial court did not err in this respect, as is shown below.  Second, the state appellate court asserted, "The record demonstrates that neither prosecution or defense asked the jury during voir dire if they knew Detective King or if they had any family members that were victims of sexual abuse."  That was incorrect, in part.  During *voir dire*, the prosecutor asked the venire, "[A]nybody here recognize or actually know me or Detective King or Mr. Friedman or the defendant?"  Tr. at 43.  To the extent that the state appellate court asserted that the venire was never asked whether anyone knew King, it erred.

Lawwill is also correct that the state court of appeals' analysis is legally irrelevant for purposes of deciding his habeas petition.  The legal only ground for habeas relief is whether the trial court's decision was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" or "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Section 2254(d)(1).  The state appellate court's decision rested entirely upon Ohio law.  At no time did it cite federal law or refer to state cases that rest upon federal law.  Consequently, its analysis concerning whether the trial court erred in retaining Martinez on the jury is legally irrelevant to a petition for federal habeas relief and is not entitled to deference in adjudicating Lawwill's federal habeas petition.

Whether the state appellate court's opinion was correct, however, is not the key issue.  The fundamental issue at hand is whether the trial court violated Lawwill's constitutional rights by retaining Martinez on the jury.

-33-

The trial court made no explicit finding in retaining Martinez.  Nevertheless, a finding that Martinez could decide the case impartially on the basis of the evidence presented in court is implicit in retaining her.  That is the state court finding to which this court owes deference, unless the finding rests on an unreasonable determination of the facts in light of the evidence on the record or unless the finding was contrary to or involved an unreasonable application of clearly established Federal law, as determined by the findings of the Supreme Court of the United States.  Moreover, in determining whether to defer to the trial court's judgment, this court must keep in mind that a trial court's determination that a juror is able to set aside any partiality and decide a case solely on the basis of the evidence presented in court and the law is accorded particular deference.  *Patton*, 467 U.S. at 1038.

The record is somewhat ambiguous as to which facts the trial court believed to be true in retaining Martinez.

> THE COURT:  Hi.  Would you just sit in the first seat of the jury box, Miss Martinez?  Miss Martinez, you obviously know about the communication that the jury wrote to the Court, correct?

> JUROR NO. 7:  Yes.

> THE COURT:  And I don't believe that anyone asked you whether or not you knew anyone close to you was a victim of a crime.

> JUROR NO. 7:  Right.

> THE COURT:  Okay.  I don't know if anyone asked you whether or not -- I don't know from this letter was your daughter the victim of a sex offense?

> JUROR NO. 7:  Yes.

> THE COURT:  It was a sex crime, so --

> JUROR NO. 7:  But --

-34-

THE COURT:  Neither of the attorneys asked you about it, did they?

JUROR NO. 7:  No.

THE COURT:  So, it wasn't that you were asked a question and misspoke --

JUROR NO. 7:  I'm sorry.

THE COURT:  -- or didn't speak?  It wasn't that anyone asked you a question and did not give us a truthful answer?

JUROR NO. 7:  Right.

THE COURT:  It's just -- okay.  Now, let me ask you this, okay.  You obviously have shared that experience with the jury.

JUROR NO. 7:  Yes.

THE COURT:  Because they wrote this letter.

JUROR NO. 7:  Right.  But there is a reason.

THE COURT:  But do you and your fellow jurors understand --

JUROR NO. 7:  Yes.

THE COURT:  -- that this case is to be decided solely on the evidence --

JUROR NO. 7:  Only on the evidence.

THE COURT:  -- in the courtroom and the law as I instructed you?

JUROR NO. 7:  Right.

THE COURT:  So then the disclosure to the jury of your experience, was that to express or explain your feelings or --

JUROR NO. 7:  No, it explains the person.

THE COURT:  Okay.  Now, let me ask you, but from this letter, it says that they wanted us to know so it would not have an effect on this case.

JUROR NO. 7:  Right.

-35-

THE COURT:  And while jury deliberations are secret, it is the Court's duty to make sure that the deliberations are focusing on the evidence and the law in this case.

JUROR NO. 7:  Right.

Tr. at 577-80.  The court then asked Martinez if the jury was focused solely on the evidence and law in the case, and Martinez assured the court that it was.  Martinez also promised that she would not tell the rest of the jury what had been discussed between her and the court.

The court then called the jury foreman into the courtroom and asked him whether the jury was focused solely on the evidence and law in that case.  The foreman said that it was.  The court then gave the foreman a written instruction to read to the rest of the jury, telling them to decide the case solely on the evidence presented in court and the law as it had been given to the jury.

Two issues were brought to the court's attention by the note from the jury:  that Martinez knew King and that a member of Martinez's family had been a victim of sexual abuse.  The court's questioning of Martinez focused on the latter issue.  It inquired as to whether Martinez had been asked by either attorney whether she or a family member had been the victim of a sex crime.  Martinez answered correctly that she had not been asked that question.  The court did not inquire regarding a prior relationship with King.  The defense was offered an opportunity to question King, and it declined to do so.

Lawwill now claims that the trial court erred by overruling his motion for a mistrial because Martinez concealed during *voir dire* that she knew King.  While Martinez did not answer when the venire was asked if anyone knew King, this does not permit the conclusion that Martinez knowingly concealed meeting him.  King investigated the

-36-

sexual abuse of Martinez's daughter five years prior to Lawwill's trial.  Martinez may well have failed to recognize King when the venire was asked if they knew him, and she may only have recognized him after his appearance as a witness.  Lawwill may not now claim that Martinez intentionally concealed her prior meeting with King when the defense failed to inquire about this prior relationship after the court offered the defense an opportunity to question Martinez.

Absent any evidence to suggest that Martinez's failure to speak was deliberate, and absent any efforts by the defense to establish a record to that effect, this court can not conclude that Martinez deliberately concealed a recognition of King during *voir dire*. Without a conclusion that Martinez deliberately concealed a recognition of King, the court cannot overcome the special deference accorded the trial court's implicit determination that Martinez could serve impartially.

Lawwill cites *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), for the proposition that the trial court's failure to remove Martinez was contrary to a holding of the Supreme Court.  Lawwill rests this proposition on the holding in *McDonough*:

> [T]o obtain a new trial . . . , a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*McDonough*, 464 U.S. at 850.

*McDonough* is not applicable to the instant case, however.  As has already been discussed, the record is not sufficient to support a finding that Martinez deliberately failed to answer honestly when asked if she knew King.  In addition, *McDonough* was a

federal case, not a case arising in state court.  As the Supreme Court has noted, that is

a significant difference in determining which federal rules govern jury selection:

> Our cases dealing with the requirements of voir dire are of two kinds:  those that
> were tried in federal courts, and are therefore subject to this Court's supervisory
> power . . . and those that were tried in state courts, with respect to which our
> authority is limited to enforcing the commands of the United States Constitution. .
> . .  We enjoy more latitude in setting standards for voir dire in federal courts
> under our supervisory power than we have in interpreting the provisions of the
> Fourteenth Amendment with respect to voir dire in state courts.

*Mu'min v, Virginia*, 500 U.S. 415, 422-23 (1991) (citations omitted).  The Supreme Court

has never applied the holding of *McDonough* to cases arising in state court.

Consequently, Lawwill cannot say that the trial court's decision to retain Martinez was a

conclusion opposite to that reached by Supreme Court holdings on a set of facts

materially indistinguishable from relevant Supreme Court precedent.

 The trial court's decision to retain Martinez was not unreasonable in light of the

evidence in the record, nor was it contrary to the holdings of the Supreme Court.

Consequently, it cannot be a ground for habeas relief in the instant case.  For this

reason, Lawwill's second ground for relief should be dismissed as without merit.

C.  *Whether the trial court erred in re-sentencing Lawwill on the basis of facts not
    determined by the jury, in violation of his Sixth Amendment right to trial by jury*

 Lawwill contends that requiring the trial court to re-sentence Lawwill by

determining which of Lawwill's convictions arose from conduct occuring prior to July 1,

1996 and which arose from conduct occurring on July 1, 1996 violated Lawwill's Sixth

Amendment right to be tried by a jury, as expressed in the holding of *Blakely v.

Washington*, 542 U.S. 296 (2004).  Respondent asserts that the state appellate court's

response to this argument on direct appeal was correct.

-38-

The trial court initially sentenced Lawwill to nine years' imprisonment, including three consecutive terms of imprisonment of three years each on counts one, two, and three, plus five three-year terms of imprisonment on counts four through eight, the sentences to be served concurrently with each other and concurrently with the sentences on counts one through three.  On direct appeal, the state appellate court affirmed Lawwill's conviction but remanded the case for re-sentencing.  According to the appellate court, the Ohio legislature enacted S.B. 2 on July 1, 1996.  This altered sentences for felonies of the third degree from a minimum of 1 year's imprisonment and a maximum of two years' imprisonment prior to July 1, 1996 to a minimum of 1 year's imprisonment and a maximum of five years' imprisonment after July 1, 1996.  The state appellate court remanded the case for the trial court "to determine, based upon the evidence before the jury, which criminal acts Lawwill committed prior to July 1, 1996, and which criminal acts Lawwill committed after July 1, 1996," then to sentence him in accordance with the law in effect at those times.  Judgment, *State v. Lawwill*, App. No. 88251 (8th App. Dist. July 2, 2007), Answer, Exh. 11, p. 23.  At re-sentencing, the trial court re-sentenced Lawwill to an aggregate term of nine years incarceration.  In sentencing Lawwill, the court determined that counts one, two, and three were based on conduct occurring on or after July 1, 1996.  The court sentenced Lawwill to three consecutive three-year terms of imprisonment on those counts.  The court also determined that the remaining counts occurred prior to July 1, 1996.  The court sentenced Lawwill to one and a half years' imprisonment on each of these counts, the sentences to be served concurrently with each other and concurrently with the sentences for counts one through three.  The court also classified Lawwill as a Tier II

-39-

Offender.

In *Blakely*, the Supreme Court clarified a rule first stated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Apprendi* held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301. *Blakely* defined *Apprendi's* "statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at 303 (emphasis in original). The statutory maximum is not the maximum sentence allowed by statute after the judge finds additional facts but the maximum the judge may impose without any additional factual findings. *Id.* at 303-04.

In *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006), the Ohio Supreme Court brought the Ohio sentencing statute into compliance with *Blakely*. It severed the portions of the statute that mandated judicial fact-finding in the sentencing process. "All references to mandatory judicial fact-finding properly may be eliminated in the four areas of concern." *Id.*, 109 Ohio St. 3d at 29, 845 N.E.2d at 497. Instead of mandatory judicial fact-finding for certain sentences, judges were given full discretion to sentence within the statutorily-provided ranges. "Our remedy does not rewrite the statutes but leaves courts with full discretion to impose a prison term within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant without the mandated judicial findings that Blakely prohibits." *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 499.

As Lawwill points out, none of the eight counts of his indictment contains any

indication as to when the alleged instance of Gross Sexual Imposition occurred.  There are eight counts in the indictment, and the range during which the alleged eight instances of Gross Sexual Imposition occurred is from December 28, 1992 through December 27, 1999, an eight-year period.  When the victim was asked about Lawwill's molestation of her, she was asked whether he molested her in each year of the eight-year periods during which the molestation occurred, and she answered that he molested her in each of those years.  She also testified, however, that there were many more instances of molestation than eight during that period.  The victim testified that Lawwill abused her every time she went to his house and that she went there almost every weekend.  Tr. at 262-63.  According to the victim, "It just happened all the time." Tr. at 263.  She was unable to remember details distinguishing any one incident from other incidents, and the prosecution claimed that the abuse occurred "far exceeding eight times."  Tr. at 189, 265.

The state appellate court hearing Lawwill's appeal of his sentencing made the following relevant findings of fact and drew the following conclusions of law:

{¶ 15} The question before us is whether the trial court has the authority to make a determination at sentencing regarding when each of the eight counts of GSI occurred, especially in light of the fact that this court ordered the trial court to do so in *Lawwill I.*  We find that it does.  See *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 462 N.E.2d 410, syllabus ("Absent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case.").

{¶ 16} On remand, the trial court determined that appellant committed one count of GSI each year for eight years.  Prior to resentencing, the court stated:  "I will sentence as if-I could, if I wanted to find-because [the victim] said every weekend, every other weekend up to 26 or 52 times a year I could find that all eight counts occurred in 1999. * * * Or '98, or '97 or after July 1st of '96."

{¶ 17} Despite Lawwill's urging that the trial court find that all acts occurred prior

-41-

to July 1, 1996, the court stated "that would be in opposition to the testimony, because the testimony was, it happened every year, numerous times between the age of five and the age of 12 * * *."

{¶ 18} The Ohio Supreme Court has held that "trial courts have full discretion

> {¶ 19} to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *State v. Foster,* 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, paragraph seven of the syllabus; *State v. Mathis,* 109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855, paragraph three of the syllabus.

{¶ 20} In its recent decision in *State v. Kalish,* 120 Ohio St.3d 23, 896 N.E.2d 124, 2008-Ohio-4912, ¶ 4, the Ohio Supreme Court held: "In applying *Foster* to the existing statutes, appellate courts must apply a two-step approach.  First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law.  If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." [FN3]

FN3. We recognize that *Kalish* is merely persuasive and not necessarily controlling because it has no majority.  The Supreme Court split over whether we review sentences under an abuse-of-discretion standard in some instances.

{¶ 21} The court further held that "despite the fact that R.C. 2953.08(G)(2) refers to the excised judicial-fact-finding portions of the sentencing scheme, an appellate court remains precluded from using an abuse-of-discretion standard of review when initially reviewing a defendant's sentence.  Instead, the appellate court must ensure that the trial court has adhered to all applicable rules and statutes in imposing the sentence.  As a purely legal question, this is subject to review only to determine whether it is clearly and convincingly contrary to law, the standard found in R.C. 2953.08(G)." *Id.* at ¶ 14, 845 N.E.2d 470.

{¶ 22} On remand, the trial court had wide latitude in the sentence it could have imposed.  The sentence could have been as short as one year, if the trial court found all counts occurred before July 1, 1996, imposed the minimum of one year on each count, and ran the terms concurrently.  Or, the sentence could have been as much as forty years, if the trial court found all counts occurred after July 1, 1996, imposed the maximum of five years on each count, and ran the terms consecutively.

{¶ 23} Here, the trial court imposed a nine-year term of imprisonment when it resentenced Lawwill.  This sentence is within the statutory range for the crimes for which he was found guilty.  Indeed, the trial court could have imposed an

-42-

even greater sentence.  As such, we do not find that the sentence is clearly and convincingly contrary to law.  Furthermore, we do not find that the court abused its discretion by imposing a term of nine years.

*State v. Lawwill*, 2009 WL 279741, at *3-*4 (Ohio App. Feb. 6, 2009).

Although Lawwill cited *Apprendi* and *Blakely* in his brief to the state appellate court, and although he argued that his re-sentencing violated his Sixth Amendment right to a jury trial, the state appellate court failed to examine whether the re-sentencing violated Lawwill's right to a jury trial pursuant to federal law.  Instead, the appellate court looked at whether the re-sentencing complied with the state appellate court's mandate, whether it complied with Ohio statutes, and whether it complied with *Foster*.  In considering whether the re-sentencing complied with *Foster*, the state court only considered whether the sentencing court stayed within the discretionary sentencing ranges permitted by *Foster*.  The state appellate court did not consider whether the re-sentencing court violated the rule in *Apprendi* and *Blakely* by determining when each count of Gross Sexual Imposition occurred, which was necessary to determine which sentencing ranges were applicable to Lawwill's case.  Consequently, the state appellate court never considered the crux of Lawwill's constitutional argument:  The re-sentencing court violated Lawwill's right to a jury trial by making factual findings as to when each count of Gross Sexual Imposition in the indictment occurred before sentencing Lawwill. As the state appellate court made no finding regarding the constitutionality of Lawwill's sentencing, this court has no state opinion to which it must defer regarding this issue.

The state appellate court directed the trial court to re-sentence Lawwill because it was impossible to sentence him without knowing when the acts described in each of the eight counts of the indictment occurred.  That is, before Lawwill could properly be given

-43-

*any* sentence, the court had to make findings of fact as to when the acts described in the indictment occurred.  The jury made no determination that would have assisted the court in making this finding.[4]  Moreover, the facts adduced at trial did not resolve this question.  Although the victim testified that at least one act occurred in each of the eight years in which the acts described in the indictment occurred, the victim also testified that he molested her every time she went to his house, which was about every other week during the relevant eight-year period.  The trial court itself at re-sentencing described its latitude as follows:  "[B]ecause she said every weekend, every other weekend up to 26 times a year I could find that all eight counts occurred in 1999 . . . Or in '98, or '97 or after July 1st of '96."  Defendant's transcript of Proceedings, January 17, 2008, Answer, Exh 27, p. 9.  The court chose to find that one offense occurred in each of the eight relevant years because that would be "the most reasonable interpretation" of the evidence.  *Id.*  The defense conceded that this "would be *a* reasonable interpretation . . . ."  *Id.* (emphasis added).

Under these circumstances, the trial court violated the rule of *Apprendi*, as elaborated by *Blakely*, when it found that the conduct underlying each count of the indictment occurred during a different year.  This is a factual finding that related directly

_____

[4]  Although the prosecution implied in its closing argument that each of the eight counts of gross sexual imposition corresponded with a year from 1992 through 1999, Tr., v. II, p. 500, v. III, p. 501, the indictment, the evidence at trial, and the court's instructions did not specify or require this.  Moreover, it was clear that the jury was uncertain about this because, during deliberations, the jury sent a note to the court asking if each count of the indictment corresponded to a year from  1992 through 1999.  The court declined to resolve this question.  Tr. at 569-73.  When the jury returned its verdict, it presented the court with eight verdict forms, one for each of the identically-worded counts of the indictment.  Tr. at 562.  The completed verdict forms, therefore, gave no indication of the jury's opinion as to when the conduct underlying each count of the indictment occurred.

-44-

to the maximum term of imprisonment the trial court could have imposed. *Apprendi* held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301. *Blakely* defined *Apprendi's* "statutory maximum" as "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 303. The maximum sentence to which the court could have sentenced Lawwill without making any additional findings of fact was two years on each count, the maximum penalty for Gross Sexual Imposition prior to July 1, 1996. By making the additional factual finding that the conduct underlying three of the offenses occurred after July 1, 1996, the court increased the maximum sentence to three years' imprisonment on three of the counts of the indictment. This violated Lawwill's Sixth Amendment right to a jury trial, as described in *Apprendi* and *Blakely*. Consequently, Lawwill's third ground for relief should be granted.

IV.

For the reasons given above, that portion of Lawwill's first ground for relief alleging a due process violation because he was not provided adequate notice of the charges against him and because his trial did not protect him from his right to be free from double jeopardy should be GRANTED. To cure these constitutional violations, either the state must strike all but one of counts of which Lawwill was convicted or Lawwill's petition for a writ of habeas corpus should be granted. Lawwill's second ground for relief, alleging that the trial court violated his right to due process by retaining juror Martinez should be DENIED. Finally, Lawwill's third ground for relief, alleging that

his re-sentencing violated his Sixth Amendment right to trial by jury should be

GRANTED.  Lawwill should be re-sentenced.  In re-sentencing Lawwill, the state court

should be limited to sentencing him to no more than two years' imprisonment on any

remaining count of the indictment.


Date:  December 9, 2010                              s/ Nancy A. Vecchiarelli
                                                      United States Magistrate Judge


### OBJECTIONS

   **Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

-46-