UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT LAWWILL, | ) | CASE NO. 1:08 CV 2840 |
| | ) | |
| Petitioner, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| FRANCISCO PINEDA, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

      This matter comes before the Court upon the Report and Recommendation of Magistrate Judge Nancy A. Vecchiarelli.  (ECF #27).  Timely objections to the Magistrate's Report and Recommendation were filed by the Respondent.  (ECF # 31), and the Petitioner filed a Response to Respondent's Objections.  (ECF # 34).  The  Court has fully reviewed the Report and Recommendation, the objections and responses filed by the parties, and all of the applicable law.  The Court finds that some of the objections raised by the Respondent have merit, and, therefore, declines to adopt the Report and Recommendation of the Magistrate Judge in full.

**PROCEDURAL HISTORY/STANDARD OF REVIEW**

The Magistrate's Report and Recommendation fully and accurately sets forth the factual background and procedural history of this action, and outlines the proper legal standards that are applicable to a petition for habeus corpus relief.  These sections of the Report and Recommendation, are, therefore, adopted as written.

**ANALYSIS**

**I.  Petitioner's First Ground for Relief**

Mr. Lawwill filed a petition for habeus corpus asserting three grounds for relief.  Ground One claims

> A defendant is denied due process of law under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, section 10 of the Ohio Constitution[1] when he is not provided with sufficient notice of the charges against which he is to defend himself and the right to be protected from double jeopardy when the trial court fails to dismiss duplicative indictments that result in convictions for identical charges.

As stated by Magistrate Vecchiarelli, the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeus corpus.  The AEDPA requires that a writ for habeus corpus on behalf of a person in custody pursuant to a state court judgment must be denied "unless the adjudication of the claim resulted in a decision that was contrary to, or involved an objectively unreasonable application of, clearly established Federal law, as determined by the Supreme Court

---

[1] Under the habeus standard, this Court is not able to consider Mr. Lawwill's claim that he was denied due process under Article I, section 10 of the Ohio Constitution, and must defer to the State courts' determination on that and all other state issues.

of the United States." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409 (2000). Law is considered to be "clearly established" under this standard, only if it arises from a holding of the Supreme Court (not by its dicta), and only if it was clearly established at the time of the petitioner's conviction. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006). A state court decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by the Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at the opposite result. *Williams v. Taylor*, 529 U.S. at 405-406.[2] The standard is not met if a state court is merely erroneous in its application of federal law. *Id.* at 410.

   This standard creates a "'substantially higher threshold' for obtaining review than de novo review. *Renico v. Lett*, ___ U.S. ____, 130 S. Ct. 1855, 1862 (2010)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933 (2007). The AEDPA, therefore, "imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed. 2d 481 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed. 2d 279 (2002)*(per curiam)*." *Williams v. Taylor*, 529 U.S. at 1862.

   Mr. Lawwill was indicted on eight identical counts of Gross Sexual Imposition, and eight identical counts of Kidnaping with sexual motivation specifications. He filed a motion to dismiss duplicative counts, and that motion was denied. Mr. Lawwill went to trial, and a jury found him guilty of all eight counts of Gross Sexual Imposition, and acquitted him on all eight counts of

---

[2] Pursuant to the AEDPA, subsection (e)(1), "a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

Kidnaping.

The indictment read in relevant part: "Defendant(s) unlawfully had sexual contact with Jane Doe, DOB: December 28, 1987, not his spouse, whose age at the time of the said sexual contact was under 13 years of age, to-wit: DOB December 28, 1987. . . . [and] Defendant(s) unlawfully and by force, threat or deception removed Jane Doe, DOB: December 28, 1987, from the place where she was found or restrained her of her liberty for the purpose of engaging in sexual activity, as defined in Section 2907.01 of the Revised Code...."  The date range for each offense was the same, and spanned an seven year period from December 28, 1992 through December 27, 1999.

A.  The *Valentine* Case

Mr. Lawwill, and Magistrate Vecchiarelli relied almost exclusively on the Sixth Circuit's opinion in *Valentine v. Koneth*, 395 F.3d 626 (2005), to support the contention (and recommendation)[3] that habeus relief be granted in this case.  *Valentine* relied primarily on *Russell v. United States*, 369 U.S. 749, 82 S. Ct. 1038 (1962), and applied the three criteria for the sufficiency of an indictment established in that case.  Although the *Valentine* court recognized, as is discussed in more detail below, that the federal right to a grand jury has never been found to be incorporated against the states, it cited several United States Circuit Court cases that have found that the same due process requirements set forth in *Russell* should be applied to state criminal

---

[3] Although Magistrate Vecchiarelli identified nearly all of the same issues addressed in this opinion that would weigh against adopting the Sixth Circuit's line of reasoning in *Valentine,* in the end, it appears that she believed she was bound by the principles of precedent to follow *Valentine's* holding.  Based on subsequent opinions by the Sixth Circuit, clarifying opinions issued by the United States Supreme Court, and the procedural and factual differences between *Valentine* and this case, this Court is not convinced that *Valentine* constitutes binding precedent under the circumstances of this case.

4

charges.[4] Following the decision in *Valentine*, however, the Supreme Court has clarified that any reliance on a circuit court decision, including that Circuit's own precedent, when determining what is "clearly established" federal law is error under the AEDPA standard. *Renico v. Lett*, 130 S. Ct. 1855, 1866 (2010).[5]

The Sixth Circuit has not relied on or even cited its own holding in *Valentine* since *Renico* was decided. In fact, this Court could only find three Sixth Circuit cases citing *Valentine* prior to the *Renico* decision, and the *Valentine* holding was followed in only one. The single Sixth Circuit case following *Valentine* was the case of *U.S. v. Madison*, 226 Fed. Appx. 535 (2007), which involved a federal indictment for tax evasion and other related crimes. *Valentine* has not again been applied to bar a state conviction in a habeus action under the AEDPA.[6]

Further, *Valentine* involved a set of facts and circumstances that, although very similar to,

---

[4] In addition, the *Valentine* court relied on precedent from non-Supreme Court cases to establish several other principles that were essential to its decision including: *Parks v. Hargett*, 1999 U.S. App. LEXIS 5133 (10th Cir. 1999), for the idea that each criminal count must be anchored to a distinguishable criminal offense in order for the defendant to properly defend.

[5] In *Renico*, the Supreme Court went so far as to disavow any argument that the Sixth Circuit's opinion could be considered in AEDPA review as an "illumination" of the requirements set forth in actual Supreme Court precedent. Where the Supreme Court itself has not set forth specific factors required under the circumstances, no such factors may be considered when applying the AEDPA standard. *Renico* at 1866.

[6] The Sixth Circuit did consider the holding in *Valentine* in the case of *Cowherd v. Million*, 260 Fed. Appx. 781 (6th Cir. 2008), a habeus case contesting a state rape conviction. The *Cowherd* court distinguished the facts in its case from those in *Valentine*, however, and held that under the circumstances the conviction was not barred by double jeopardy concerns. The Sixth Circuit also referenced *Valentine* in the case of *Shafer v. Wilson*, 364 Fed. Appx. 940 (6th Cir. 2010), a habeus case challenging a state conviction for rape and Gross Sexual Imposition against a minor, but did not apply it because, although the issues were based on similar facts, the petitioner never "raised a due process claim under *Valentine*...."

are ultimately substantively distinguishable from the relevant facts at issue in this case.  Therefore, even if we accept the *Valentine* court's interpretation of what constitutes clearly established federal law, we absolutely cannot say that under the AEDPA standard, the state courts in this case came to a decision that was contrary to clearly established federal law when faced with a set of facts materially indistinguishable from relevant precedent, as required by the holding in *Williams v. Taylor*, 529 U.S. at 405-406, or that the state court decisions constituted an unreasonable application of more general principles that have been clearly established under federal law.

  The defendant in *Valentine* was convicted of 20 counts of child rape and 20 counts of felonious sexual penetration against his eight-year old stepdaughter.  All forty counts were alleged to have occurred during the same nine and a half month time period.  No further information was provided in the indictment or at trial to distinguish one count from another.   The location of each count was given in a bill of particulars, which identified the same family home as the location for all of the alleged offenses.  The victim was the only witness, and she testified that defendant engaged in three separate acts on  "about twenty," "about fifteen," and  "about ten" occasions.  She also testified generally about other incidents that occurred in other areas of the house.  The victim altered her estimation as to the number of offenses at times during cross-examination.

  The *Valentine* court held the indictment itself violated the defendant's right to due process because he was not adequately informed of the charges against him.  Further, it held that the convictions were invalid because there was not enough evidence to support some of the charges upon which he was convicted, leading the court to conclude that he may have been convicted twice for the same offense.  Finally, the court held that the indictment, and consequently the conviction, was invalid because the indictment did not protect Mr. Valentine from potential future charges

6

based on the same offenses during the same period of time.

        1. Due Process

Specifically, the *Valentine* court held that the indictment in that case had two major deficiencies that led to potential problems with the adequacy of the notice of the charges: (1) the wide date range, and (2) the lack of differentiation among the criminal charges. Ultimately, the *Valentine* court held that providing a wide time range for the charges in a child abuse prosecution is not in conflict with constitutional notice requirements. *Valentine* at 632. This Court is also unaware of any clearly established federal law that would invalidate a charge of Gross Sexual Imposition against a child for providing too wide of a date range in the charges. In fact, the parties have not cited, and this Court is not aware of any clearly established federal law requiring that a charge for Gross Sexual Imposition (especially with regard to a child) must even include any reference to that the date and/or time frame of the alleged offense. Therefore, the lack of specificity with regard to the alleged time frame of the charged offenses does not constitute a basis for habeus relief.

Mr. Valentine was charged with two separate criminal acts that occurred twenty times each, rather than forty separate criminal acts, and the victim did not differentiate any of the instances of abuse at trial, testifying instead only that each act occurred "about" some estimated number of times. Because of this, the *Valentine* court held that Mr. Valentine was not adequately notified of the charges against him for purposes of satisfying the due process requirements of the Federal Constitution.[7] The court held that because of the way he was indicted and tried, without any

---

[7] It should be noted that although the *Valentine* court spent a great deal of time discussing the lack of differentiation in the indictment, it did not rely exclusively on wording of the indictment, but also considered the lack of any testimony or evidence at trial that attempted

specific reference or evidence distinguishing individual acts or offenses, the jury could not have legitimately found the defendant guilty of some counts but not the others.  Rather, they held that the jury could only have found him not guilty of some counts if they concluded that the victim had overestimated the number of abusive acts.

In this case, however, the indictment and the evidence at trial provided enough differentiation between counts to allow a jury to determine whether each of the eight separate counts was sufficiently and independently proven.   The Grand Jury chose to indict Mr. Lawwill on only eight counts over the course of seven consecutive years (spanning eight calendar years), despite evidence that there were more instances of abuse, thereby effectively avoiding the evidentiary problem that was present in the *Valentine* case.  Because there were only eight counts, the victim was able to testify to eight individual instances, without resort to general estimations or guesses.  She testified to conduct occurring in three different locations, and testified that she was improperly touched at least once when she was five, and once in each grade from second to seventh grade.  She was also asked if the conduct occurred in total more than ten times, and she responded with an unequivocal "yes."  Further, she testified that she went to Mr. Lawwill's house nearly every

---

to differentiate each individual count, or of any non-speculative evidence as to the number of offenses that actually occurred.  In fact, to come to such a conclusion based solely on the language contained in the indictment, and without reference to the evidence adduced at trial would be to effectively tie the hands of prosecutors in child abuse cases, as it is difficult to discern how a prosecutor could otherwise charge separate instances of the exact same criminal act, during the same relevant time period. Without the ability to charge in this way, a defendant would face the same charges and penalties for abusing a child once during the relevant time period, as a defendant would for abusing a child forty times within the relevant time period, simply because there were no distinguishing changes in the behavior or the location of the abuse.  This would violate all principles of justice and proportionality, and would provide the defendant with impunity for committing identical multiple offenses repeatedly over the course of time.

other weekend, and the conduct occurred each time she visited.  This was not set forth as a general estimate, but was stated as a fact supported by testimonial evidence.  Therefore, the jury would not have had to convict Mr. Lawwill on all counts or none.  For example, the jury could have easily found that Mr. Lawwill should be acquitted on some counts, had they believed his "alibi" or lack of access evidence corresponding to two years during the indictment period.  Or, they could have acquitted him on one count for the second grade year if they thought the prosecution had not proven that the touch in the van in second grade was "in an erogenous zone" as the defense points out in its traverse.  On the other hand, if they believed that the victim was credible, and that she was in fact molested every other weekend for seven years, they could have found proof for all eight counts in testimony relating to a single calendar year.  In other words, the jury in this case had a basis upon which to identify and evaluate whether Mr. Lawwill actually engaged in eight individual instances of the prohibited conduct.  In contrast, the jury in *Valentine*, had to accept all or none of the charges or arbitrarily discount the number the estimated instances of the prohibited activity because the victim did not identify forty separate instances, but generally estimated that the conduct occurred "about" forty-five times.

        2. <u>Double Jeopardy</u>

            a. <u>Multiple convictions for the same offense during the original trial</u>

In considering the double jeopardy issue, the *Valentine* court noted that the state appeals court found that there was no evidentiary support for five of the twenty sexual penetration charges, and that he had been, in effect, "over-convicted."  This finding led the *Valentine* court to conclude that at least these five convictions constituted double jeopardy in his initial trial, because he was convicted of twenty counts based on evidence of fifteen.  *Valentine* at 636.  There is no such issue

in Mr. Lawwill's case.  In this case, there was evidence that Mr. Lawwill actually engaged in more than the eight instances of Gross Sexual Imposition for which he was actually convicted, and there is no evidence or implication that he was convicted twice based on evidence of a single instance of abuse.  If anything, Mr. Lawwill was under-charged and under-convicted based on the evidence. Therefore, the double jeopardy issues that may have existed in the *Valentine* case are simply not present under the circumstances of this case.

### b.  Protection from future prosecution for the same offenses

*Valentine* also held, based on the federal indictment requirements in *Russell*, that Mr. Valentine's indictment did not protect him from double jeopardy in future potential prosecutions.  As discussed above, however, *Valentine* based this holding on case law established by various circuit courts and the Supreme Court has since invalidated any such reliance on non-Supreme Court cases.  *Renico v. Lett*, 130 S. Ct. 1855 (2010).[8]   In addition, this holding relied on the lack of specificity and distinction between the forty identical counts alleged in *Valentine*.  However, as set forth above, taking into consideration the evidence adduced at trial, the charges against Mr. Lawwill were more exact and more delineated than were the charges against Mr. Valentine.  Therefore, the indictment and trial transcripts taken together would limit any prosecution against Mr. Lawwill in the future, for allegations matching those made in his previous trial, and occurring during the same time period.

Thus, because the United States Supreme Court has invalidated the reasoning behind one of

---

[8] This Court is not contesting the existence of clearly established federal law holding that a defendant, in either a state or federal criminal case, should not be able to be tried twice for indistinguishable offenses.  However, the Supreme Court has never held that in a state case, this protection is to be enforced by invalidating the original state indictment and overturning the original state conviction, rather than simply barring any attempt at a second prosecution.

the major grounds for the *Valentine* decision; because there are important distinctions between the facts of *Valentine* and the facts in the instant case; and, because the Sixth Circuit has, itself, failed to follow *Valentine* in any other state habeus corpus proceeding; this Court finds that the Valentine holding does not dictate the outcome of this case, and will, therefore, proceed to review the issue directly addressing the relevant Supreme Court precedent.

### B.  Clearly Established Federal Law Derived From United Supreme Court Cases

#### 1.  State Issued Indictments

The parties have not cited, and this Court is not aware of any United States Supreme Court cases that have invalidated, or even considered the validity of a state court conviction based on the alleged insufficiency of a state indictment.  In fact, the United States Supreme Court has held that the right to indictment by a grand jury in state court proceedings is not guaranteed by the U.S. Constitution.  In *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), the Supreme Court noted that the Fifth Amendment right to "presentment or indictment of a Grand Jury" does not extend to state court proceedings, and in *McDonald v. City of Chicago*, 130 S. Ct. 3020, at fn. 13 (2010), the court reiterated that this federal right was not incorporated into the due process requirements assigned to the states through the Fourteenth Amendment.  *See also, Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S. Ct. 1221, 1227 (1971)*; Hurtado v. California*, 110 U.S. 516, 521 (1884).  In fact, the Supreme Court case primarily relied on by the parties addresses the requirements for a federal indictment, which are constitutionally mandated in federal cases only.  *Russell v. United States*, 369 U.S. 749, 82 S. Ct. 1038 (1962).   Although defendants in Ohio are guaranteed the right to a grand jury indictment by the Ohio Constitution, this guarantee is not based

in federal law, and therefore cannot form the basis for a habeus corpus review under the AEDPA.

*Russell,* the Supreme Court case cited by the parties and relied on by the *Valentine* court does not establish any requirements or rights that must be protected by a state court indictment, let alone an indictment in a child molestation case, which even *Valentine* acknowledged has unique issues and balancing considerations with regard to the level of specificity that can be expected. *Russell* held as follows: an indictment for a violation of 2 U.S.C. § 192, which makes it a crime to refuse to answer any question pertinent to the subject under inquiry before either House of Congress or their specified committees or subcommittees when summoned, must identify the subject which was under inquiry at the time of the defendant's alleged default or refusal to answer. This is clearly not a holding on a question of law based on a set of facts that is materially indistinguishable from the facts in Mr. Lawwill's case. The requirements for a federal indictment, which is both Constitutionally required and statutorily mandated, setting forth a charge for failure to properly respond to a Congressional summons is clearly distinguishable from the requirements of a state indictment, which is not required under the U.S. Constitution or any federal law, setting forth charges of Gross Sexual Imposition against a minor child. Therefore, *Russell* cannot reasonably be considered to create clearly established federal law with regard to the facts of this case under the AEDPA standard.[9]

The Supreme Court in *Russell*, began its inquiry by specifically considering "the purpose

---

[9]

To the extent it could be argued that some of the general statements made in *Russell* could possibly be applied to a broader range of cases, the Supreme Court's suggestion as to the appropriateness of applying its holding in other factual contexts would constitute dicta. Law, however, is "clearly established" only by the actual holdings of Supreme Court cases, not by dicta contained within its opinions. *Carey v. Musladin*, 549 U.S. —, 127 S. Ct. 649, 653 (2006).

served by a grand jury indictment in the administration of <u>federal</u> criminal law," specifically "the Fifth and Sixth Amendments to the Constitution." *Russell* at 760 (*emphasis added*). The court went on to discuss the grand jury requirement for alleged crimes established by Congress through the Fifth Amendment. As set forth above, this requirement of the Fifth Amendment is not applicable to the states under the Fourteenth Amendment. Therefore, even if *Russell* had addressed facts that were materially indistinguishable from this case, which it did not, it would could not have created clearly established federal law relating to the requirements of a state, as opposed to federal, indictment, when its decision relied so heavily on Fifth Amendment based requirements for indictments that are not imputed on the states.[10]

Therefore, the federal indictment requirements set forth in Russell cannot be considered clearly established federal law with regard to the sufficiency of state indictments. States, however, are bound by the more general Constitutional mandates of the Fifth and Sixth Amendments commanding that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb," and that all accused shall "be informed of the nature and cause of the accusation" against them. U.S. Const. Amend V, VI; *see also, e.g., Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056 (1969); *accord McDonald v City of Chicago*, 130 S. Ct. at fn. 13.

    2. <u>Double Jeopardy</u>

The Double Jeopardy Clause guarantees that Petitioner cannot be tried twice for the same offense, and were he to be charged again with an offense that mirrored the charges he was acquitted of, and/or convicted of in his first trial, he would be protected. There is no clearly established

---

[10] The other two Supreme Court cases relied on by the *Valentine* court also involved federal, not state, indictments. *See*, *Hamling v. United States*, 418 U.S. 87, 94 S. Ct. 2887 (1974), and *United States v. Cruikshank*, 92 U.S. 542 (1876).

federal law, however, that holds that this guarantee should affect the validity of his original convictions, or acquittals. The parties have not cited, and this Court has not been able to find any Supreme Court cases that have invalidated a state conviction because a defendant was convicted of multiple violations of the same criminal statute during the same extended time period, nor any in which the Supreme Court invalidated a state conviction because a double jeopardy issue might arise if the defendant was retried on the same or similar charges at some point in the future. Mr. Lawwill was convicted of violating the same criminal statute, eight separate times, during the same general time period. Nothing in the facts presented or procedures implemented during trial even remotely suggests that he may have been convicted twice for the same occurrence of the charged offense. If anything, the evidence clearly suggests that had the government chosen to pursue even more counts, they could have obtained additional convictions. Therefore, the principles behind the double jeopardy prohibition, as articulated by the United States Supreme Court, are not implicated under the facts of this case. *See, e.g.*, *Palko v. Connecticut*, 302 U.S. 319, 328, 58 S. Ct. 149, 153 (1937)("The state is not attempting to wear the accused out by a multitude of cases with accumulated trials.... This is not cruelty at all, nor even vexation in any immoderate degree.").

Further, at this point in time, Mr. Lawwill has not been re-charged with any offense, let alone any offense that could arguably be considered to be barred by the Double Jeopardy Clause. Therefore, there is no double jeopardy issue with regard to potential future charges that is properly before the Court at this time. "In the case of a double jeopardy claim, the court must compare the facts alleged in the second indictment with those in the first to determine whether the prosecutions are for the same offense. ..." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). Thus, the double jeopardy issue arises in this context only when a second indictment is issued. Nothing in clearly

established Supreme Court precedent would require a state court to invalidate the first conviction, just because a second prosecution may be limited or barred by the Double Jeopardy Clause.

### 3. Due Process/Adequate Notice of the Charges

Thus, the sole remaining question is whether or not under clearly established federal law, as determined by the United States Supreme Court, the defendant was adequately notified of the nature and cause of the accusations against him.  The standard for adequate notice is whether the defendant is fairly informed of the charge against which he must defend.  In this case Mr. Lawwill was fairly informed of the charges, and had sufficient information to be able to admit or deny the charges and to adequately prepare any defense that was honestly available to him.  He was informed of the nature of the conduct alleged, the time period within which it allegedly occurred,[11] and who he was alleged to have harmed.  Further, through the course of discovery and the trial, he was informed of the precise location of certain alleged conduct, and a more detailed specification of the time periods in which each count was alleged to have occurred.[12]  Based on this information Mr. Lawwill was clearly able to understand the charges that he faced, and was able to identify any defenses he may have had to rebut those charges.  In fact, Mr. Lawwill's primary defense was his denial that any inappropriate conduct ever occurred with the victim.  Nothing other than the nature of the conduct and the identity of the victim was required in order for him to fashion and assert this

---

[11] Mr. Lawwill does not appear to challenge the seven year time span assigned to each alleged count in the indictment.  Rather he acknowledges that *Valentine* did not find the lack of specificity in the time or date of the alleged count to be a problem of constitutional magnitude.

[12] As the conduct was alleged to have occurred outside the presence of other people, there was no need to be able to ascertain or identify potential witnesses to the alleged conduct.

defense. He further put on some defense in the nature of an alibi, claiming that he lacked access to the victim for a two year time segment within the charging period. The time frame asserted was clearly sufficient to allow him to discern whether he had an alibi for various relevant time periods, or whether he could allege lack of access to the victim during those time periods.

Any further specificity is not a constitutional mandate, but a matter that can be raised to address the credibility of the witnesses, or the sufficiency of the evidence. Mr. Lawwill has not cited to any other information that he would have required in order to adequately prepare his defense, nor has he indicated that his defense would have changed in any way had he been provided with additional distinguishing facts in the indictment or at trial. The defendant could have argued during trial that any ambiguity or lack of differentiation in the charges or the attendant time frame made the testimony or other evidence so vague or unreliable as to preclude a finding of guilty beyond a reasonable doubt; but, he cannot legitimately claim that he lacked adequate notice of the charges against him, or that he was rendered incapable of providing any available defense.

The Supreme Court has not established any requirements for state issued indictments. Further, the facts addressed in Mr. Lawwill's case are substantially and materially distinguishable from any facts addressed in potentially relevant Supreme Court precedent involving the state's obligations under the due process and double jeopardy protections of the United States Constitution. Finally, the state court was not objectively unreasonable in its application of the correct governing legal principles derived from Supreme Court decisions to the facts of this case. *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003). Therefore, under the AEDPA standard, the state court's decision was not contrary to, nor did it involve an unreasonable application of a clearly established federal law arising from Supreme Court precedent, and habeus

relief is, therefore, not warranted under Petitioner's first ground for relief.


## II.  Petitioner's Second Ground for Relief

The Magistrate's Report and Recommendation fully and accurately sets forth the factual and legal issues that are applicable to Petitioner's second ground for relief.  Neither party has objected to the Magistrate's Report and Recommendation on this issue.  This section of the Report and Recommendation, is, therefore, fully adopted as written.


## III.  Petitioner's Third Ground for Relief

The Magistrate's Report and Recommendation also fully and accurately sets forth the factual and legal issues applicable to Petitioner's third ground for relief.  The Respondent has filed objections to the report.   The Court has reviewed *de novo* those portions of the Magistrate Judge's Report and Recommendation to which objection has been made.  *See* FED. R. CIV. P. 72(b). The Court finds Magistrate Judge Vecchiarelli's  Report and Recommendation to be thorough and well-written, but ultimately incorrect on the issue of re-sentencing.    The Report and Recommendation suggests that Mr. Lawwill should be re-sentenced based on *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 503 U.S. 466 (2000).  Those cases stand for the proposition that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."  *Blakely* at 301.  The "statutory maximum" is the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  *Id.*  at 303.  In this case, if the earlier sentencing law was followed for each Count, as

17

urged by the Petitioner, the Court could have sentenced Mr. Lawwill to sixteen years based on the facts reflected in the jury verdict.[13] Mr. Lawwill was, instead, sentenced to nine years total, seven years less than the maximum allowable sentence under the earlier sentencing structure. Because his penalty was not "increased beyond the statutory maximum" allowed based on the findings of the jury, *Blakely* does not apply, and Mr. Lawwill is not entitled to be re-sentenced.

---

[13] Mr. Lawwill was convicted of eight counts, each of which could have had a two year maximum sentence under the sentencing law Petitioner claims applies. The Court could have chosen to sentence him to the maximum sentences for each Count and to run each Count consecutively. This would have resulted in a sixteen year sentence.

**CONCLUSION**

Having reviewed the record, the Magistrate's Report and Recommendation, the briefs submitted by the parties, and all of the applicable law, this Court finds that the Petitioner's conviction was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  The Petitioner's request for a writ of habeus corpus is, therefore, DENIED.   IT IS SO ORDERED.

     /s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED:   May 16, 2011